1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14

BRIAN DEXTER,

                    Plaintiff,

        v.

LINH K. TRAN and JOHN DOE
TRAN, wife and husband; and
AVALON FINANCIAL
SERVICES, LLC,

                    Defendants.

NO.  CV-08-307-RHW

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS; DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

15
16
17
18
19

        Before the Court is Defendant's Motion to Dismiss (Ct. Rec. 9) and

Plaintiff's Motion for FRCP 56, Summary Judgment; and FRCP 12(c) Judgment

on the Pleadings (Ct. Rec. 20).  A hearing on the summary judgment motion was

held on May 21, 2009.  Plaintiff was represented by Michael D. Kinkley;

Defendants were represented by Brooke Kuhl.

20

**BACKGROUND**

21
22
23
24
25

        On October 7, 2008, Plaintiff filed suit against Defendants Linh K. Tran and

John Doe Tran, and NOB, LLC,[1] alleging claims under the Fair Debt Collection

Practices Act, the Washington Collection Agency Act, and the Washington

Consumer Protection Act.  Plaintiff seeks actual damages, statutory damages

26
27
28

        [1]Avalon Financial Services, LLC is the successor to NOB, LLC, and the

parties stipulate to the amendment of the caption to identify Avalon Financial

Services, LLC, as the proper Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

pursuant to the FDCPA, costs and reasonable attorneys' fees, pursuant to the FDCPA, and a declaratory judgment that Defendants' practices violate the FDCPA.  The bases for the FDCPA claims was a collections proceeding that was initiated by Defendants in Spokane County Superior Court in 2007.

Prior to that, in September, 2001, Plaintiff filed a voluntary petition for bankruptcy under Chapter 7.  As part of the bankruptcy proceedings, Plaintiff, who was represented by counsel, entered into a Reaffirmation Agreement with Household Retail Services, Inc. regarding his obligation with respect to his 2000 purchase of a Wave Runner.  The Reaffirmation Agreement was signed on December 3, 2001, and filed with the Bankruptcy Court on December 12, 2001. The right to collection under the Reaffirmation Agreement was assigned to B-Line, LLC, and then to Defendant Nob, LLC.  Plaintiff defaulted under the terms of the Reaffirmation Agreement.

On September 25, 2007, Defendant NOB sued Plaintiff in state court to obtain a judgment based on the Reaffirmation Agreement.  Through his counsel, Plaintiff attempted to file an answer in which he asserted cross-claims for violations of the Fair Debt Collections Practice Act claims and similar Washington state claims.  These claims were eventually crossed out by hand and not included in the filed answer because Plaintiff did not have the money to pay the filing fees for the counterclaims.[2]  An amended answer was subsequently filed.  In the amended answer, Plaintiff did not assert any counterclaims, but asserted affirmative defenses, including as follows:

> 5.22    In addition, defendant is protected by and has the right of remedy under statutory and common law provisions.

> 5.23    Such statutory provisions include, but are not limited to the Fair Debt Collection Practices Act (FDCP), 15 U.S.C. Sec. 1692; Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. Chapter 96, the Washington State Consumer Protection Act, RCW 19.86; the Collection Agency Act, RCW 19.16; the Fair Credit Reporting Act,

---

[2]The un-redacted answer was served on Defendants.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2**

RCW 19.182.  Defendant is protected by and entitled to protection under provisions of these acts.  Defendant would additionally submit that violation of these provisions of federal or state acts likely additionally constitutes violations of the Washington State Consumer Protection Act.

5.26   Plaintiff and their predecessors in interest owe a duty under Federal and State laws as a "deb6t collector", which duties were breached.

(Ct. Rec. 6-3, Ex. I, p. 70-71).

In his prayer for relief, Plaintiff sought actual and treble damages pursuant to federal and state statutory authority.

Defendants moved for summary judgment in state court.  In his Memorandum in Support of Motion to Dismiss Complaint and Response to Motion for Summary Judgment, Plaintiff made the following arguments to Judge Sypolt:

Plaintiff suggests that this court will grant judgment for $12,805.58 against defendant even though defendant has answered plaintiff's allegations with affirmative defense and counterclaim and at minimum is entitled to offset, if not judgment, against plaintiff.  There remains genuine dispute of material facts.

(Ct. Rec. 6-3, Ex. J, p. 76).

Defendant has provided answer to plaintiff's complaint in this matter in which he has challenged jurisdiction and venue and virtually denied all plaintiff's allegations and demanded they provide proof in a court of proper jurisdiction and venue.  United States Code Chapter 41, 15 U.S.C. Sect. 1692 Subchapter V - DEBT COLLECTION PRACTICES (a)venue, provides, to wit: "any debt collector who brings any legal action on a debt against any consumer shall - . . . (2) . . . bring such action only in the judicial district or similar legal entity–(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action."

(Ct. Rec. 6-3, Ex. J, p. 81).

Defendant alleges, in answer, plaintiff's violation of federal and state law such as Fair Debt Collection Practices Act (FDCP), 15 U.S.C. Sec. 1692; Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. Chapter 96, the Washington State Consumer Protection Act, RCW 19.86, the Collection Agency Act, RCW 19.16; the Fair Credit Reporting Act, RCW 19.182, are but a few of the several issues constituting genuine issues of material fact within this matter thus precluding summary judgment.

In fact, the plaintiff violated the Fair Debt Collection Practices Act (FDCP) merely by filing this lawsuit in an improper venue.  Such constitutes a genuine issue of material fact.

(Ct. Rec. 6-3, Ex. J, p. 84).

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

> Plaintiff improperly filed this lawsuit in Spokane County Superior Court ignoring both State and Federal law which required venue of a court with contacts in Douglas County where all of the defendant's contacts were in this matter. Venue in Spokane County Superior Court is improper and thus this matter must be dismissed.

(Ct. Rec. 6-3, Ex. J, p. 84).

> Plaintiff's violation of federal and state law such as Fair Debt Collection Practices Act (FDCP), 15 U.S.C. Sec. 1692; Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. Chapter 96, the Washington State Consumer Protection Act, RCW 19.86, the Collection Agency Act, RCW 19.16; the Fair Credit Reporting Act, RCW 19.182 as well as the challenge of validity of the Reaffirmation Agreement and whether plaintiff owed a duty to mitigate by acceptance of defendant's surrender of the watercraft are but a few of the several issues constituting genuine issues of material fact within this matter thus precluding summary judgment.

(Ct. Rec. 6-3, Ex. J, p. 85).

At the April 18, 2008 hearing with respect to NOB's Motion for Summary Judgment and Brian Dexter's Motion to Dismiss, there was some confusion on the part of NOB regarding Dexter's claims. Counsel for NOB made the following statements:

> Now, next in Mr. Dexter's pleadings, we see a variety of claims of some kind about allegations in the Fair Debt Collection Practices Act. If he does have claims, and this is something about this Court that's a little unclear to me in that he hasn't filed a counterclaim, it puts the plaintiff in a position of being unsure whether a responsive pleading is required, but in the Summary Judgment, we've seen Fair Debt Collection Practices Act.

> Courts are clear that the Fair Debt Collection Practices Act applies to the collection of the debt. It doesn't apply to the validity of the debt. So even if there are concerns or there are claims under the Act, that would only go to a potential setoff. It doesn't affect the underlying liability of the debt.

(Ct. Rec. 60, p. 8).

In addressing Judge Sypolt, Plaintiff's counsel stated:

> Your Honor, the law is very clear and I indicated by giving the Court a copy of the *Harrington vs. CACV of Colorado, LLC* at 508 F.Supp. 128, a 2007 case, which [is] very on point.

> It says, any debt collector that brings any legal action on a debt against any consumer shall grant such action only in the judicial district or similar legal entity in which such consumer signed the contract sued upon or be in which such consumer resides at the commencement of the action. That comes from 15 USC Section 692(i) [sic], which is the FDCPA.

(Ct. Rec. 60, p. 11)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

1
2
3
4

>    Now, as the — as the *Harrington* case says, the fact that this case was filed in the wrong venue, per se, is a violation of the FDCPA, and the debtor is entitled to remedy, you know, of damages and attorney fees and treble damages under that law, under that federal law, as well as the Consumer Protectoin Act of the State of Washington.

(Ct. Rec. 60, p. 14).

5
6

In response, counsel for NOB indicated to the Court that it was willing to agree or stipulate to a transfer.  Additionally, counsel stated,

7
8
9
10

>    If the Fair Debt Collection Practices Act applies, and at this point, I'm not sure that it does.  If it does, Your Honor, I agree that there's a venue provision that provides venue is proper.  One, where the agreement's entered, and here to me the facts certainly weigh in favor of the agreement having been entered in Spokane, or two, venue is proper where the defendant resides, and at this point, I certainly agree that the defendant appears not to reside in Spokane.

(Ct. Rec. 60, p. 18-19).

11
12

Judge Sypolt, in issuing his ruling, made the following statement:

13
14
15
16

>    The Court, also, would observe that the venue issue was raised very late in the proceedings.  I'm aware that waiver argument has been raised by plaintiff counsel.  At the same time, we have the application of the FDCPA, which would require, as counsel said, that the venue occur in certain specified areas and no other areas, locations.

(Ct. Rec. 60, p. 23)

17
18

Judge Sypolt found there was a waiver of the venue issue and granted the motion for summary judgment.

19      **1.      Defendant Avalon Financial Service's Motion to Dismiss**

20
21
22
23

Defendant Avalon Financial Services asserts that the *Rooker-Feldman* doctrine precludes this Court from having subject matter jurisdiction to hear this case.  Defendant also argues that the Court can dismiss this action under the doctrine of claim preclusion or issue preclusion.

24      **B.      Standard of Review**

25
26

Defendant is seeking dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

27      **(1)      Fed. R. Civ. P. 12(b)(1)**

28

In support of a motion to dismiss under Rule 12(b)(1), the moving party may

submit "affidavits or any other evidence properly before the court. . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citations omitted).

In general, a district court is permitted to resolve disputed factual issues bearing upon subject matter jurisdiction in the context of a Rule 12(b)(1) motion unless "the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits." *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1196 (9th Cir. 2008).

The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984 (9th Cir. 2008). Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. *Id.*

### (2)    Fed. R. Civ. P. 12(b)(6)

Issue or claim preclusion is not a jurisdictional matter. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002) (*quoting Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000)). At the pleading stage, "general allegations embrace the specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.    Rooker-Feldman Doctrine

The *Rooker-Fedman* doctrine is a well-established jurisdictional rule that prevents federal courts from second-guessing state court decisions by barring the

lower federal courts from hearing de facto appeals from state-court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)*; D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983); *Bianchi v. Rylaarsdam,* 334 F.3d 895 (9th Cir. 2003). In *Noel v. Hall*, the Ninth Circuit explained the doctrine as follows:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

341 F.3d 1148, 1154 (9th Cir. 2003).

In analyzing the *Rooker-Feldman* doctrine, the Court "cannot simply compare the issues involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint." *Bianchi*, 334 F.3d at 900. Rather, the district court must pay close attention to the *relief* sought by the federal-court plaintiff. *Id.*

*Rooker-Feldman* may apply where the parties do not directly contest the merits of a state court decision, but rather, are attempting to bring a suit that is a *de facto* appeal from a state court judgment. *Ruesser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008). "A federal action constitutes such a *de facto* appeal where 'claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* In such circumstances, the Circuit noted, "the district court is in essence being called upon to review the state court decision." The term "inextricably intertwined" has a narrow and specialized meaning in the *Rooker-Feldman* doctrine. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004). It permits courts to dismiss claims "closely related to claims that are themselves barred under *Rooker-Feldman.*[3] *Id.* The Circuit went on to say,

---

[3]In *Kougasian*, the Ninth Circuit held that *Rooker-Feldman* applies only when the federal plaintiff both asserts as his injury legal error or errors by the state

[b]ut the 'inextricably intertwined' test does not mean that a federal plaintiff can never raise issues already decided in completed state court litigation. If that were so, *Rooker-Feldman* would in some cases give greater preclusive effect to state court judgments than the states themselves would give those judgments. Such super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that federal courts give the same (not more and not less) preclusive effect the rendering state courts would give to those judgments. Similarly, if the "inextricably intertwined" test means that a federal plaintiff cannot raise issues that are "inextricably intertwined" with issues raised in simultaneous ongoing state court litigation, *Rooker-Feldman* would prevent the parallel state and federal litigation that is one of the hallmarks of our federal system.

*Id.* at 1142-43.

Here, when one focuses on the relief that Plaintiff is seeking in this current lawsuit, it is clear that the *Rooker-Feldman* doctrine does not bar this current action. Plaintiff is not seeking to overturn the money judgment that was entered against him in state court. Rather, he is seeking statutory damages for Defendant's conduct in bringing the lawsuit. He is not asserting as his injury legal errors by the state court and is not seeking relief from the state court judgment. Therefore, the *Rooker-Feldman* doctrine does not preclude Plaintiff's claims.

## C.   Issue and Claim Preclusion

Defendant also argues that Plaintiff's complaint should be dismissed pursuant to the doctrines of issue and claim preclusion.

The federal courts have traditionally adhered to the related doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.*

---

court *and* seeks as his remedy relief from the state court judgment. 359 F.3d at 1143. In that case, the Circuit held that the *Rooker-Feldman* doctrine does not apply because the plaintiff had not alleged that she had been harmed by legal errors made by the state court; rather she alleged that the defendants' wrongful conduct caused her harm. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**

Additionally, federal courts have consistently accorded preclusive effect to issues decided by state court, thereby promoting comity between state and federal courts. *Id.*

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered" under the Constitution's Full Faith and Credit Clause and under 28 U.S.C. § 1738.[4]  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Thus, issue preclusion is decided under the law of the state where judgment was entered.  *Ross v. Alaska*, 189 F.3d 1107, 1110 (9th Cir. 1999).

Under Washington law, with respect to claim preclusion, a final ruling involving the same cause of action between the same parties will govern subsequent cases involving the same action.  *Hadley v. Cowan*, 60 Wash. App. 433, 440-441 (1991).   Four criteria that must be present in order for claim preclusion to apply.  There must be: (1) the same subject matter, (2) the same cause of action, (3) the same persons and parties, and (4) the quality of the parties.  *Energy Northwest v. Hartje*, 148 Wash. App. 454, 464 (2009).  In determining if a concurrence of identity exists between the causes of action, the following should

---

[4]The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts and records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
28 U.S.C. § 1738.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9**

be considered:  (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.  *Id.* (citation omitted).

Under Washington law, the doctrine of issue preclusion bars a plaintiff from relitigating "issues actually litigated and necessarily determined."  *Id.* at 465.  The elements that need to be present for the doctrine to apply are: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.  *Id.*

As discussed at the hearing, there are three different scenarios regarding the application of the FDCPA to a state debt collection proceedings.  In the first scenario, a defendant could appear and permit judgment to be entered,  knowing the case was filed in the wrong venue so that act of filing the complaint violated the FDCPA.  In this scenario, the potential FDCPA claim would not be waived and could be brought in a second action.  In the second scenario, a claim is brought under state law that would be proper under state venue statutes, but the court is asked to find that because of FDCPA, it should not proceed and it should be dismissed.  Likewise, in this scenario, the potential FDCPA claim would not be waived.  In the third scenario, a party, recognizing that the state court has concurrent jurisdiction, pleads a violation for the FDCPA in his answer and asks for relief in the form of damages under the FDCPA.   The state court does not grant the relief requested by the party and enters judgment accordingly.  In this case, the Court believes that claim and issue preclusion would prevent the re-litigation of the FDCPA claim.  The Court believes that the third scenario accurately describes the underlying state court proceedings.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10**

### (1)    Claim Preclusion

As set forth above, Plaintiff attempted to bring claims under the FDCPA before Judge Sypolt, in his amended answer, his memorandum, and in making his oral arguments. Specifically, Plaintiff identified his right to statutory damages and offset under the FDCPA for the alleged filing of the debt collection suit in the wrong venue, pursuant to 15 U.S.C. § 1692i—the same claim that he is bringing in the instant action. *See* Amended Complaint (Ct. Rec. 2, ¶ 6.7). Although Judge Sypolt did not necessarily directly rule on Plaintiff's claim under § 1692i, it clearly was presented to Judge Sypolt and Judge Sypolt ruled against Plaintiff in denying his motion to dismiss and granting NOB's motion for summary judgment. Plaintiff specifically asked for affirmative relief based on the Fair Debt Collection Practices Act and Judge Sypolt could have granted that relief if he believed it was warranted. Thus, Plaintiff is precluded from bringing a claim under § 1692i in this instant action. If Judge Sypolt erred in denying Plaintiff's requested relief, the proper course of action is to pursue the assigned error through the appeals process in the state court. Thus, application of the doctrine will not work an injustice on Plaintiff.

### (2)    Issue Preclusion

In his complaint, Plaintiff asserts claims under § 1693e for making false, misleading, and/or deceptive representations, under § 1692e(5) for threatening to take action that cannot legally be taken, under § 1692f for using unfair and unconscionable means to collect or attempt to collect a debt; under § 1692f(1) by attempting to collect an amount not allowed by law; and § 1692f, 1692f(1) and 1692e by bringing legal action on a time-barred debt.

These claims are based on Plaintiff's belief that NOB was not entitled to bring an action to collect on the debt because the statute of limitations had expired.

Plaintiff made this same argument before Judge Sypolt and Judge Sypolt rejected his arguments. There was a final judgment on the merits. The parties are

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11**

in privity.  Accordingly, Plaintiff is precluded from relitigating the issue of whether the underlying debt collection proceeding was barred by the statute of limitations in relationship to his FDCPA claims.  Again, any error in Judge Sypolt's decision could be rectified through the appeals process.

**2.    Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion for Summary Judgment is based on his belief that Defendant NOB instituted a collection action that was filed in the wrong venue and was time-barred.  For the reasons stated above, Plaintiff is precluded from bringing a claim under § 1692i, and is precluding from relitigating the issues of whether the debt was time-barred and whether there was adequate proof of ownership.  As such, summary judgment is not appropriate.

**3.    Defendant's Counterclaim for Attorneys' Fees and Costs**

In their answer, Defendant asserted a counterclaim for attorneys' fees and costs pursuant to 15 U.S.C. § 1692.  In its opposition to Plaintiff's Motion for Summary Judgment, Defendant asserted a cross-motion for summary judgment on it counterclaim for attorneys' fees and costs.  Defendant relies on the Reaffirmation Agreement signed by Plaintiff that authorizes a recovery of attorneys' fees and costs.  Plaintiff did not respond to Defendant's motion for summary judgment on the counterclaim.  Although pursuant to Local Rule 7.1, the Court may conclude that the failure to oppose Defendant's motion may be considered by the Court as consent on the part of the party failing to file an opposition to the entry of an order adverse to the party, the Court concludes that the interest of justice would be better served by giving Plaintiff the opportunity to respond to the motion.  *See Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (recognizing that the proper administration of justice is better served by a deliberate decision than by default).  Within ten days from the date of this Order, Plaintiff is directed to file a response to Defendant's counterclaim for attorneys' fees.

**4.    Plaintiff's Motion for Order to Show Cause Why Brooke C. Kuhl**

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12**

**WSBA # 35727 Should Not be Held in Contempt**

At the hearing, Ms. Kuhl, counsel for Defendant, referred to the transcripts of the motion for summary judgment. Ms. Kuhl stated, "And I didn't get a final transcript until actually I got the court reporter to sign it this morning."

Plaintiff asserts that Ms. Kuhl intentionally misled the Court when she indicated that she had only received the transcript of the April 18, 2008 hearing on the morning of May 21, 2009. Plaintiff asks the Court to hold counsel in contempt of court.

In response, Defendant filed the Declaration of Heather Gipson, the Court Reporter who transcribed the April 18, 2008 summary judgment hearing. Ms. Gipson indicated that she inadvertently printed the signature page and executed the same without updating the document to show the current date. She stated that that the transcript in question was, in fact, picked up by Defendant's counsel's office the morning of May 21, 2009. Ms. Kuhl also stated that she sent a letter to Plaintiff's counsel on April 30, 2008, that discussed the pertinent portions of the transcript of the hearing.

The Court finds that Ms. Kuhl did not mislead the Court when she stated that she only received the final copy on May 21, 2009. This was an accurate statement. Moreover, Plaintiff has not shown how he was prejudiced by Defendant's referring to and relying on the transcript–a transcript of a hearing in which Plaintiff participated.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (Ct. Rec. 9) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (Ct. Rec. 20) is **DENIED**.

3. Plaintiff's Motion to Strike (Ct. Rec. 22) is **DENIED**, as moot.

4. Defendant's Motion to Expedite (Ct. Rec. 36) is **DENIED**, as moot.

5. Plaintiff's Motion to Continue Hearing (Ct. Rec. 50) is **GRANTED**.

6. Plaintiff's Motion to Expedite (Ct. Rec. 52) is **GRANTED**.

7.    Plaintiff's Motion for Leave to File Sur-Reply (Ct. Rec. 55) is **DENIED**.

8.    Plaintiff's Motion to Expedite (Ct. Rec. 57) is **GRANTED**.

9.    Plaintiff's Motion for Order to Show Cause Why Brooke C. Kuhl WSVA # 35727 Should Not Be Held in Contempt (Ct. Rec. 63) is **DENIED**.

10.    The District Court Executive is directed to amend the caption of the parties to replace NOB, LLC, with Avalon Financial Services, LLC.

11.    Within ten (10) days from the date of this Order, Plaintiff is directed to file his response to Defendant's motion for summary judgment as to the counterclaim for attorneys fees.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, and forward copies to counsel.

**DATED** this 5th day of August, 2009.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Senior United States District Judge

Q:\CIVIL\2008\Dexter\order.wpd

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14**